We find there have been no acts that will shut them off from enforcing it in this case.

That being true it follows they have a right to enjoin this party from selling whisky upon this lot, and that is our judgment in the case.

---

## STREETS AND HIGHWAYS—TELEPHONE POLES.

[Columbiana Circuit Court, February Term, 1901.]

Laubie, Burrows and Cook, JJ.

### ALBERT HAYS ET AL. V. COLUMBIANA COUNTY TELEPHONE CO. ET AL.

1. TELEPHONE—USE OF STREETS.

The telephone is but a new method adopted for the exercise of an old legitimate use of streets—the transmission of messages; and where a municipality has granted to a telephone company the right to put up its poles and wires in the streets, the adjoining lot owners have no right to interfere with or restrain such use of the streets, unless such use obstructs ingress and egress to and from their buildings and premises, or interferes with their rights to light or air, in such manner as to cause some substantial injury.

2. INTERFERENCE WITH ACCESS TO BUILDING—UPPER DOORS INCLUDED.

Such right of ingress and egress is not confined to people, animals and vehicles, nor to surface doors, but embraces outer doors in the upper stories of buildings, to and through which boxes of merchandise, or other packages, are raised and taken from the street; and a substantial interference with such use of such doors might be enjoined.

APPEAL.

*Carey & Mullins*, for plaintiffs.

*G. S. Walton, A. H. Clark* and *W. G. Wells*, for defendants, cited :

Dedication of streets: Sec. 2601, Rev. Stat.; Miller v. Indianapolis, 24 N. E. Rep., 228 [123 Ind. 196]; Campbell v. Kansas, 13 S. W. Rep., 897 [102 Mo., 326; 10 L. R. A., 593]; Lockland v. Smiley, 26 Ohio St., 94 ; 24 Am. & Eng. Ency., 5 and notes; Fulton v. Mehrenfeld, 8 Ohio St., 440 ; Wisby v. Bonte, 19 Ohio St., 244, 246.

Additional burden or servitude : Auerbach v. Telephone Co., 9 Dec., 389 ; Railway Co. v. Tel. Assocn., 48 Ohio St., 390 [27 N. E. Rep., 890]; Western Union Tel. Co. v. Williams, 19 Am. St., 918 ; Pierce on Railroads, 233 ; Chase v. Sutton Co., 4 Cush., 152 ; Petticord v. Railroad Co., 35 Md., 463 ; Commonwealth v. Temple, 14 Gray, 69 ; Attorney

General v. Railroad Co., 125 Mass., 215 [28 Am. Rep., 264]; Smith v. Council, 33 Gratt., 208 [36 Am. Rep., 788]; Kehrer v. Richmond, 81 Va., 745 ; Pierce v. Drew, 136 Mass., 75 [49 Am. Rep., 7]; Young v. Yarmouth, 9 Gray, 386 ; Commonwealth v. Boston, 97 Mass., 555 ; Bay State Brick Co. v. Foster, 115 Mass., 431 ; York Tel. Co. v. Keesy, 5 Pa., Dist. Rep., 370 ; McDevitt v. Gas Co., 28 Atl. Rep., 948 [160 Pa. St., 367] ; Lockhart v. Railway Co., 21 Atl. Rep., 26 [139 Pa., 419]; Hamilton v. Railroad Co., 8 Dec., 174; Glidden v. Cincinnati, 11 Dec. (Re.), 853 [30 B. 213] ; Barney v. Railway Co., 11 Dec. (Re.), 880 [30 B. 286] ; Mich. Tel. Co. v. Benton Harbor, 80 N. W. Rep., 386 ; DeLoup v. Mobile, 127 U. S., 640 ; Pierce v. Drew, *supra* ; Commonwealth v. Temple, 14 Gray, 69, 77.

Private Rights—Nuisances : Rhodes v. Dunbar, 57 Penn. St., 274 [98 Am. Dec. 221] ; Mayor of Baltimore v. Rudecke, 49 Md., 217, 228 [33 Am. Rep., 239] ; McCormick v. Columbia, 4 Mackey, 396 [54 Am. Rep., 284 and note] ; See 47 Am. Rep. 453 ; People v. Tel. Co., N. Y. Supreme Ct., N. Y. Daily Reg., March 19, 1883 ; Julia Bldg. Assoc'n v. Tel. Co., 88 Mo., 258 [57 Am. Rep., 398] ; McGee v. Overshiner, 49 N. E. Rep., 951 [150 Ind., 127].

LAUBIE, J.:

This cause has been submitted to the court upon the pleadings and evidence, for the purpose of obtaining a mandatory injunction to compel the telephone company to remove a pole and wires thereon from a street, known as Lundy street, adjoining the premises of the plaintiffs in the city of Salem ; the store room and buildings of the plaintiffs being on the northeast corner of Main and Lundy streets.

This case presents the question of the erection of telephone poles and wires upon a street of a municipality, and not upon a highway in the country. The two are entirely dissimilar with respect to the rights of adjoining proprietors. In the highways in the country the owner of the land from whom the highway is obtained retains the legal title. He not only retains the legal title, but the right to all uses of the land, within the limits of the highway, which are not inconsistent with the right of passage in the public—the only right which the public acquire, including, of course, the right to make the highway suitable for such passage. He may cultivate it, plant trees, and do anything that he chooses in the way of its use which is not inconsistent with, and does not obstruct public travel ; but no private person, or company, has the right so to use it, or to dig holes in it and plant poles therein, without his consent, any more than such person or company could plant and cultivate fruit trees.

No such right exists, however, in the original owner of the fee in a street of a municipality. There, the dedication or appropriation is to the public for streets and pavements ; and the legal title passes to and vests in the municipality, and the statute requires the municipality to take charge and control of them, to keep them in repair, and free from obstruction and nuisance. The ownership, management and control is thus placed exclusively in the hands of the municipality, and no one has a right to do upon the streets or pavements of a municipality what he may rightfully do as owner of the legal title to the land in a highway in the country.

The city of Salem had the right, therefore, to grant the use of the streets to the defendant company for the erection of its poles and wires.

for the transmission of messages, in such a manner, and to such an extent, as would not substantially interfere with the rights of the adjoining owners therein, to-wit ; the right to air and light, and of free ingress and egress to and from their premises. The telephone is a new method of transmitting messages, and that is all. Before its invention, such transmission from one part of a town to another part, was by messenger on foot or horseback, or in vehicle. Now it is done by telephone through, and by force of electricity upon the wires. It is simply a new method adopted for the exercise of an old, well established and legitimate use of streets. In this respect it is like the case of the conveyance of passengers. Instead of the old method of vehicles drawn by horses, they are now conveyed by cars on rails laid in a street, with electricity as the propelling power ; and the adjoining lot owner, although he originally owned the legal title to one half of the street, or the whole of it, has no right to complain, and no remedy, unless it interferes substantially in his use of his property in the way of ingress and egress to it, and of light and air.

We regard this in the same light and that no right could be exercised upon the part of, or vested in, the owners of this adjoining lot to restrain these parties from putting up their poles and wires in the streets unless they created some substantial injury to their property by the obstruction of egress and ingress, or the obstruction of light and air.

Indeed, John Fawcett, the ancestor of the plaintiffs, never was the owner, and never had the legal title to Lundy street opposite these premises. He bought but one half the lot in question ; it was a lot in Samuel Davis' first addition to the city of Salem, and Lundy stseet was not laid out upon it, nor then in existance. The east half of that lot was purchased by Fawcett, and he erected a building upon it, facing Main street on the south, and according to the testimony of Mr. Hunt, who was the only one who spoke about the facts as they existed in those early days, the original frame house stood eastward of the line of Fawcett's half of the lot. He had a door on the west toward the back of this house, leading out apparently upon his own land. Subsequently Davis laid out a second addition, adjoining the first addition on the north, with Lundy street delineated upon it to its intersection with Green street, a street running east and west along the north line of the first addition ; and while people on foot and with teams were in the habit of travelling over the intervening space, Lundy street was not laid out between Green and Main streets until afterwards.

In 1834 Davis deeded such intervening space to the village of Salem, for a street, and the village projected and opened Lundy street from Green to Main street, and over the west half of the lot in question. Thereafter Fawcet built the present store house and extended it as far west as his west line and the east line of Lundy street. So that whatever might be the result of the disposition of the legal title, or of the property within that street, as claimed by counsel for plaintiff, in case it was ever vacated, it is clear that the legal title never vested in Fawcett, nor in any of his subsequent successors in title. We need not, therefore, bother ourselves about, nor attempt to decide the proposition of where the property would go, or the legal title to it, in case Lundy street should be vacated. It is clear that the legal title never vested in these parties that are now complaining, or their predecessors in title ; and if it had it would not change our holding in this case.

The only conclusion that we can arrive at under the testimony is, that there has been no substantial injury to the parties plaintiff by the erection of this pole and wires, as they now are. There is no substantial injury shown to the ingress and egress of the property, or to the plaintiff's right to light or air. And for that reason this case will be dismissed.

Of course it is disposed of solely upon the testimony as now offered—the condition of affairs as they now exist. If the telephone company should hereafter make such changes, or additions, as would substantially interfere with the enjoyment of the property of the plaintiffs, either in the obstruction of ingress and egress to the property, or of the light or air, then a remedy would accrue to them ; but, under the circumstances of this case as they now are, they do not show any substantial injury in either of those regards, and hence no right to the injunction asked for can be granted.

There is a matter included in the general statement, as to which, perhaps, a definite statement had better be made. The right of ingress and egress is not confined simply to the surface of the land, or to a door. It applies equally to doors above the surface through which merchandise packages are taken ; such as plaintiffs have in the second and third stories of their building facing Lundy street. The evidence does not disclose any substantial injury to the use of these doors, or interference therewith. The distance between the wires as now strung, and those doors, is sufficient to take up any ordinary package free and clear of the wires. Of course, if the telephone company should, by placing wires so near to these doors as to interfere with the lifting and conveying of merchandise in packages, or other things, to the floor above, that would be a matter for future consideration. It appears that these doors open outward, out into the open air, instead of, as is ordinarily done, opening inward. At one time it seems there was a wire there that interfered somewhat with the opening of the upper door, but that was taken away, and now the way seems to be clear for taking anything desired into or out of the door, and no substantial interference with the plaintiffs' rights, in that regard, now exist.

The petition will be dismissed.

---

## CORPORATIONS—CONDITIONAL SUBSCRIPTIONS.

[Licking Circuit Court, March Term, 1901.]

Douglass, C. J., Voorhees and Donahue, JJ.

### GEORGE C. STUNT V. NEWARK WELDLESS TUBE & STEEL CO.

1. CONDITIONAL SUBSCRIPTION TO STOCK, WHEN NOT CONDITION-PRECEDENT.

In a contract between a subscriber and a corporation for shares of the capital stock in the company, which provides that the subscriber shall be given a position in the company that will pay him two dollars a day or better, and on failure to comply therewith, the subscription to be null and void, such stipulation for employment contemplates that the subscriber will become a stockholder before he will be employed, and that compliance by the corporation with the condition is not to be regarded as a condition precedent to his becoming a member of the corporation. Such a provision or condition for employment is an independent stipulation, for the breach of which the remedy would be in damages, and not to recover back the subscription paid.